

NUMBER 13-17-00671-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**NEFTALY NUNEZ A/K/A NEFTALI
NUNEZ GONZALEZ A/K/A NEFTALI
NUNEZ,**                                                                        **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                          **Appellee.**

---

**On appeal from the 357th District Court
of Cameron County, Texas.**

---

# MEMORANDUM OPINION

**Before Justices Benavides, Longoria, and Hinojosa
Memorandum Opinion by Justice Longoria**

Appellant Neftaly Nunez a/k/a Neftali Nunez Gonzalez a/k/a/ Neftali Nunez was

convicted for aggravated sexual assault of a child and indecency with a child. *See* TEX.

PENAL CODE ANN. §§ 22.021(a)(2)(B), 21.11(a)(1) (West, Westlaw through 2017 1st C.S.).

By eight issues, which we have renumbered, Nunez argues on appeal that (1) the evidence was legally insufficient to support his convictions, and that the trial court erred by: (2) denying his motion to sever; (3) allowing biased jurors to remain on the panel; (4) failing to remain impartial and neutral; (5) denying his oral motion for continuance; (6) admitting certain expert testimony; (7) allowing the State to make inappropriate closing arguments; and (8) improperly instructing the jury in the jury charge. We affirm.

## I. BACKGROUND

Nunez was indicted on charges of aggravated sexual assault of a child, a first-degree felony (count one), and indecency with a child, a second-degree felony (count two). *See id*. §§ 22.021(a)(2)(B), 21.11(a)(1). Trial began on November 14, 2017.

S.L.[1], the child complainant in count one, testified that Nunez is a friend of her mom's friend, S.C. According to S.L., S.C. and Nunez spent a lot of time with S.L.'s family, including on the date of the alleged incident, January 9, 2013. S.L. asserted that Nunez was asked to get soda for a party and that she and Nunez left together to acquire soda. S.L. claims that Nunez took her to a remote area and sexually assaulted her before returning to the party. S.L. also admitted that she did not like Nunez because she witnessed him grabbing S.C.'s throat and pushing her.

A.G., the child complainant in count two, is the daughter of S.C. According to A.G., Nunez touched her breast and "private part" two times when she was about seven or eight years old and lived in an apartment. She testified that Nunez additionally touched her breast and "private part," both over and under the clothes, twice while she was at her

---

[1] To protect the identity of the children, we refer to them using initials. *See* TEX. R. APP. P. 9.8(b).

2

grandmother's house. She further testified that Nunez touched her breast and penetrated her "private part" with his finger three times while living in a trailer.

Sonja Edelman, a forensic nursing expert for the State, testified regarding female physiology, sexual assault, and her experience conducting interviews of sexual assault complainants.

Detective Sam Lucio, a police detective for the City of Brownsville, the lead investigator in the case, testified about his investigations in this case.

After the State rested, Nunez's wife, Joanna Nunez, testified that she married Nunez in 2010. According to her, she "ended the marriage because he cheated on me with [S.C.], the victim's mother." Joanna claimed that S.C. has had contact with Nunez in the last year.

Nunez took the stand and denied touching either of the child complainants. He asserted that the grandmother's house was so small, he never would have been alone with the children long enough to have to commit the alleged offenses.

The next day, the jury charge was read to the jury without any objections by either party. The jury returned a guilty verdict on both counts. On count one, the jury returned a sentence of sixty years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice. On count two, the jury returned a sentence of twenty years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice. The trial court sentenced Nunez according to the punishment assessed by the jury. This appeal followed.

**II. LEGAL SUFFICIENCY**

3

In his first issue, Nunez argues that there was legally insufficient evidence to establish that he committed the offenses.

**A. Standard of Review and Applicable Law**

When reviewing the legal sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (emphasis in original); *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The fact finder is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *See Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008). "The jury may choose to believe or disbelieve any portion of the witnesses' testimony." *Bargas v. State*, 252 S.W.3d 876, 887 (Tex. App.—Houston [14th Dist.] 2008, no pet.). A reviewing court cannot overturn a conviction simply because it disagrees with the jury's verdict. *See id*.

There may be insufficient evidence to support a conviction if there is a "fatal variance" between the "offense as charged in the indictment and the offense proved." *Stevens v. State*, 891 S.W.2d 649, 650 (Tex. Crim. App. 1995). A variance is fatal only if it surprises or misleads the party to his prejudice. *See id*.

**B. Analysis**

**1. Identity of the Complainants**

Nunez's complaint that there was a variance between the indictment and the evidence adduced at trial will be treated as an insufficiency claim. *See Gollihar v. State*,

4

46 S.W.3d 243, 247 (Tex. Crim. App. 2001) ("[W]e have routinely treated variance claims as insufficiency of the evidence problems.").

Nunez first argues that there is no evidence that the children who testified at trial are the same child complainants alleged in the indictment. According to Nunez, the State failed to provide him with a pseudonym affidavit, and therefore he was not properly informed that the State was going to use pseudonyms for the complainants. *See* TEX. CODE CRIM. PROC. ANN. art. 57.02(b) (West, Westlaw through 2017 1st C.S.).

The Texas Court of Criminal Appeals has rejected a similar argument. *See Stevens*, 891 S.W.2d at 651. In *Stevens*, the indictment referred to the complainant using a pseudonym, but throughout the trial, the complainant was referred to using his legal name. *See id.* The defendant complained that there was a fatal variance between the indictment and the evidence at trial. But the court reasoned:

> [b]y enacting art. 57.02, the Legislature changed the manner in which the victim may be alleged in an indictment. In doing so the Legislature sought to address and satisfy two competing interests: the defendant's due process right to notice of the offense for which he was indicted; and, the victim's interest in avoiding the embarrassment associated with a public pronouncement of the details of the alleged offense. The pseudonym is used to protect the victim—*not* to deprive the defendant of notice. Therefore, we hold the fatal variance doctrine is inapplicable to pseudonym cases so long as the defendant's due process right to notice is satisfied. Appellant does not, and indeed could not, contend he was surprised to learn the victim's identity.

*Id.* (internal citations omitted). The same is true in Nunez's case. He cannot argue that he was surprised or misled by the evidence at trial concerning the identity of the child complainants. *See id*. At no point during the trial did Nunez express confusion or surprise over the identity of the complainants. In addition, the pseudonyms used, S.L. and A.G., were clear enough to make it obvious which child complainant was being referred to. *See*

5

*id.* (finding no due process violation even though the pseudonym in the indictment was a number). The variance between the indictment and the names used at trial was not material. *See Gollihar*, 46 S.W.3d at 257 ("In summary, we hold that when faced with a sufficiency of the evidence claim based upon a variance between the indictment and the proof, only a 'material' variance will render the evidence insufficient."). We conclude there was legally sufficient evidence to establish the identity of the complainants. *See Stevens*, 891 S.W.2d at 651.

### 2. Intent to Arouse or Gratify Sexual Desire

Second, Nunez argues that the evidence was insufficient to prove that he had the specific intent to arouse or gratify his sexual desire as it related to count two, indecency with a child. "An essential element of the offense of indecency of a child is the mental state that accompanies the forbidden conduct: the specific intent to arouse or gratify the sexual desire of any person." *McKenzie v. State*, 617 S.W.2d 211, 213 (Tex. Crim. App. 1981); *Gonzalez v. State*, 522 S.W.3d 48, 57 (Tex. App.—Houston [1st Dist.] 2017, no pet.). Nunez argues that the evidence at trial only amounted to "he touched my breast over and under the clothes." According to Nunez, the record is devoid of any evidence of his specific intent to arouse his sexual desire.

However, the specific intent required for the offense of indecency with a child may be inferred from a defendant's conduct, his remarks, and all of the surrounding circumstances. *See Gonzalez*, 522 S.W.3d at 57; *Connell v. State*, 233 S.W.3d 460, 467 (Tex. App.—Fort Worth 2007, no pet.). An oral expression of intent is not required where the conduct itself is sufficient to infer intent. *See Connell*, 233 S.W.3d at 467.

6

Furthermore, a child complainant's testimony alone is sufficient to support a conviction for indecency with a child. *See id*. at 466.

A.G. testified that Nunez walked into her bedroom while she was in bed and began to touch her on her breast and vagina, both over and underneath her clothes. She testified that this happened six or seven times, and that Nunez penetrated her vagina with his finger on at least three of those occasions. The jury, as the sole judge of the credibility of the witnesses, was free to believe A.G.'s testimony, and it could have reasonably found from A.G.'s testimony that Nunez touched A.G. with the intent to arouse or gratify his sexual desire. *See id.* Therefore, we conclude that the evidence adduced was sufficient to support Nunez's conviction for indecency with a child. *See Gonzalez*, 522 S.W.3d at 57; *Connell*, 233 S.W.3d at 467.

## C. Summary

In summary, there was legally sufficient evidence concerning the identity of the complainants. *See Stevens*, 891 S.W.2d at 651. There was also legally sufficient evidence to support Nunez's conviction for indecency with a child. *See Gonzalez*, 522 S.W.3d at 57. We overrule Nunez's first issue.

### III. MOTION TO SEVER

In his second issue, Nunez argues that the trial court abused its discretion in denying his motion to sever.

## A. Standard of Review and Applicable Law

We review a trial court's ruling on a request to sever for an abuse of discretion. *See Hodge v. State*, 500 S.W.3d 612, 621 (Tex. App.—Austin 2016, no pet.). The ruling

7

of the trial court is not an abuse of discretion so long as it falls "within the zone of reasonable disagreement." *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002).

In general, a defendant who timely objects to the joinder of two or more cases consolidated or joined for trial has a right to severance. *See* TEX. PENAL CODE ANN. § 3.02(a) (West, Westlaw through 2017 1st C.S.). However, this right does not apply for prosecutions for certain crimes, including indecency with a child and aggravated sexual assault of a child, "unless the court determines that the defendant or the state would be unfairly prejudiced by a joinder of offenses." *Matthews v. State*, 152 S.W.3d 723, 730 (Tex. App.—Tyler 2004, no pet.); *see* TEX. PENAL CODE ANN. §§ 3.03(b), 3.04 (West, Westlaw through 2017 1st C.S.). There is no presumption that consolidation is unfairly prejudicial; instead, it is the defendant's burden to show how he would be unfairly prejudiced by the joinder. *See Hodge*, 500 S.W.3d at 621. To be entitled to a severance, the defendant must show "some type of prejudice beyond that which a defendant would automatically face in any case in which felony counts are joined." *Id*. at 622.

## B. Analysis

Before voir dire began on November 13, 2017, Nunez filed a motion to sever, which the trial court denied. In his motion, he argued he would be unfairly prejudiced by having offenses allegedly committed against two separate child complainants consolidated into a single case. Nunez argued that if he were convicted, the difference in sentence was as substantial as "life versus 20 years." In other words, the only argument that Nunez proffered for severing was the difference in potential sentences for the two offenses. However, that is not a distinction that is unique to this case; to the contrary, that is the type of prejudice any defendant would automatically face in any case in which a first-

8

degree felony and a second-degree felony are joined together. *See id*. Thus, Nunez did not meet his burden of showing an unfair prejudice, and the trial court did not abuse its discretion in denying Nunez's motion to sever. We overrule Nunez's second issue.

## IV. JURY PANEL ERROR

In his third issue, Nunez argues that the trial court abused its discretion by allowing biased jurors to remain on the panel.

## A. Standard of Review and Applicable Law

We review a trial court's ruling on a challenge for cause for an abuse of discretion. *See Bell v. State*, 233 S.W.3d 583, 590 (Tex. App.—Waco 2007, pet. ref'd).

> We afford the trial court considerable deference, because it is in the best position to evaluate a prospective juror's demeanor and responses. We will reverse a trial court's ruling on a challenge for cause only if a clear abuse of discretion is evident. When a prospective juror's answers are vacillating, unclear, or contradictory, we accord deference to the trial court's decision. We will not second-guess the trial court when the prospective jurors are persistently uncertain about their ability to follow the law.

*Russeau v. State*, 171 S.W.3d 871, 879 (Tex. Crim. App. 2005) (internal citation omitted).

A prospective juror should be dismissed for cause when challenged if "he has a bias or prejudice in favor of or against the defendant." *Anderson v. State*, 633 S.W.2d 851, 853 (Tex. Crim. App. 1982); *see* TEX. CODE CRIM. PROC. ANN. art. 35.16(a) (West, Westlaw through 2017 1st C.S.). Bias means an inclination to one side of the issue over the other side of the issue, which leads to the implication that the juror will not be able to act with impartiality. *See Bell*, 233 S.W.3d at 590. However, "the mere fact that a juror knows, or is a neighbor, or an intimate acquaintance of, and on friendly relations with, one of the parties to a suit, is not sufficient basis for disqualification." *Anderson*, 633

S.W.2d at 853. The trial court has discretion to determine if bias or prejudice is established to such a degree that the juror is disqualified. *See Bell*, 233 S.W.3d at 590.

To preserve error for a trial court's erroneous denial of a challenge for cause, an appellant must show that: "(1) he asserted a clear and specific challenge for cause; (2) he used a peremptory challenge on the complained-of venire member; (3) his peremptory challenges were exhausted; (4) his request for additional strikes was denied; and (5) an objectionable juror sat on the jury." *Davis v. State*, 329 S.W.3d 798, 807 (Tex. Crim. App. 2010).

**B. Analysis**

We first note that Nunez has not shown that he preserved this error for review. More specifically, Nunez has not established that his preemptory challenges were exhausted and that his request for additional strikes was denied. *See id*. However, even assuming that he preserved error, we conclude the trial court did not abuse its discretion in overruling Nunez's challenges for cause relating to the two challenged jurors.

**1. First Juror**

During voir dire, a venireman admitted that she is a teacher and had A.G. as a student. Nunez attempted to strike the venireman for cause. The following exchange occurred:

| [State]: | Is there anything about knowing [A.G.] that would make—that would make you not be a fair juror in this case. |
|---|---|
| [Juror 12]: | I would like to say no, but— |
| [State]: | Okay. Let me see if I can ask this. The defendant is entitled to a fair trial? |
| [Juror 12]: | Right. |

| [State]: | And part of the job of the juror is to weigh the testimony and credibility of the witnesses. Knowing them, could you be fair and weigh the truthfulness or voracity [sic] of the student's testimony the same way you could any of the other witnesses and be honest? |
|---|---|
| [Juror 12]: | I mean, honestly I would try my best, but I can't say with a hundred percent certainty. |

The trial court overruled Nunez's challenge for cause, and the venireman was empaneled as juror 12.

Juror 12 vacillated on her answers concerning impartiality, but she is not biased as a matter of law. *See Bell*, 233 S.W.3d at 590. She stated that she understands the defendant's right to a fair trial and she indicated that she would try to be impartial even though she was not completely certain of her ability to do so. Thus, we will afford great deference in this case to the trial court's discretion because the trial court was in the best position to evaluate juror 12's answers and demeanor. *See id.* The trial court did not abuse its discretion in overruling Nunez's challenge for cause concerning juror 12.

**2. Second Juror**

Nunez asserts that another juror should have been stricken for cause. After A.G. finished testifying, a juror interrupted the proceedings and requested to speak with the court. The juror admitted to knowing A.G. and her mom S.C. because he was A.G.'s teacher in pre-kindergarten. Nunez argued that the juror could not possibly be fair and impartial, but when questioned by the court, the juror proclaimed that he could be fair and impartial. The court dismissed the jury panel for the day so the issue could be further researched. The trial resumed the next day on November 15, 2017. Nunez insisted that the juror be struck from the panel, but the trial court overruled the challenge for cause. The trial court then denied Nunez's motion for mistrial.

11

According to Nunez, because the juror did not disclose his relationship with the child complainant as her pre-kindergarten teacher in voir dire, Nunez was not able to effectively issue a challenge for cause against him, which hindered his ability to select an impartial jury. Nunez asserts that the only remedy in such a situation is a mistrial. Nunez relies on *State v. Gutierrez*, 541 S.W.3d 91, 99 (Tex. Crim. App. 2017). It is true that the Court affirmed that "[w]hen a juror withholds material information during voir dire that the defense, using due diligence, could not uncover, the parties are denied the opportunity to exercise their challenges, which hinders their selection of an impartial jury." *Id*. at 100. It is further true that the good faith of the juror is "largely irrelevant." *Id*. However, when, as here, the information withheld has a tendency to show bias, it is appropriate to hold an evidentiary hearing to determine whether the juror is actually biased. *See id.*

> If a trial judge finds that the juror is not actually biased, and that finding is supported by the record, then the defendant has not been harmed by the violation of his constitutional right to an impartial jury. If, however, the judge finds that the juror is actually biased, the only remedy is a mistrial. We review the trial court's determination of historical fact for an abuse of discretion (i.e., whether the juror was actually biased), and appellate courts should give almost total deference to the trial court's determination if it is supported by the record.

*Id*. Thus, a mistrial is only appropriate if the juror is "actually prejudiced." *Id*.

In the present case, the juror in question asked the court if he could take a break and approach the judge separately. The juror originally stated that he did not recognize the names of the witnesses and individuals involved in the case; however, the juror informed the court at this point that he recognized A.G. and her mom because he was A.G.'s teacher in pre-kindergarten. The trial court inquired:

[Court]: [I]s there anything as a result of having her as a Pre-K student nine years ago that you think will not allow you to be fair and impartial?"

[Juror]: No, I just wanted—

. . .

[Court]: And you already told us that there's nothing about that that would in any way not allow you to be a fair and impartial juror in this case; is that correct?

[Juror]: Correct.

We will give almost total deference to the trial court's determination that the juror in question would be able to be an impartial juror because the trial court was in the best position to make that evaluation and the record supports that conclusion. *See id.* at 103. The trial court did not abuse its discretion in overruling Nunez's challenge for cause regarding this juror.

## C. Summary

The trial court did not abuse its discretion in overruling Nunez's challenges for cause on either juror. *See id.* Nunez was also not entitled to a mistrial. *See id.* We overrule Nunez's third issue.

## V. COMMENTS BY THE TRIAL COURT

In his fourth issue, Nunez argues that the trial court failed to remain neutral and impartial and that the trial court's improper comments constituted fundamental error.

## A. Standard of Review and Applicable Law

"In the Texas adversarial system, the judge is a neutral arbiter between the advocates; he is the instructor in the law to the jury, but he is not involved in the fray." *Brown v. State*, 122 S.W.3d 794, 797 (Tex. Crim. App. 2003). Accordingly, a judge

13

shall not discuss or comment upon the weight of the [evidence] or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case.

TEX. CODE CRIM. PROC. ANN. art. 38.05 (West, Westlaw through 2017 1st C.S.).

A trial court may exercise "reasonable control" over the examination of witnesses and the presentation of evidence as to "(1) make those procedures effective for determining truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment." TEX. R. EVID. 611(a). But, "[t]he trial court improperly comments on the weight of the evidence if it makes a statement that implies approval of the State's argument, indicates disbelief in the defense's position, or diminishes the credibility of the defense's approach to the case." *Simon v. State*, 203 S.W.3d 581, 590 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *see Brokenberry v. State*, 853 S.W.2d 145, 152 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd) ("To constitute reversible error, a comment by the trial court must be reasonably calculated to benefit the State or prejudice the defendant's rights.").

Absent a clear showing to the contrary, we generally presume that the trial court was neutral and impartial. *See Roman v. State*, 145 S.W.3d 316, 319 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). "Thus, judicial remarks during the course of trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Garcia v. State*, 246 S.W.3d 121, 147 (Tex. App.—San Antonio 2007, pet. ref'd). For example, a trial court's "expressions of impatience, dissatisfaction, annoyance, and even anger" do not demonstrate bias or impartiality. *Id.*; *see Liteky v. United States*, 510 U.S. 540, 556 (1994) ("A judge's ordinary

14

efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune" to partiality challenges).

**B. Analysis**

Nunez contends that throughout the proceedings below, the trial court gave the impression of "tag-teaming" with the State by making numerous statements that assisted the State or diminished the credibility of Nunez's counsel. In total, Nunez alleges that the following twelve comments by the trial court were inappropriate:

1.    telling the prosecutor to "[h]old on, [counsel for State]. I've got this";

2.    allowing testimony from Edelman that was allegedly outside of her realm of expertise;

3.    allowing the State, over Nunez's objection, to allow Detective Lucio to discuss other cases involving other victims;

4.    telling Nunez's counsel, "[n]o, I didn't ask you—I did not ask you what you thought";

5.    telling Nunez's counsel, "[y]ou are getting pretty wrapped up in your questions, aren't you? Well, unwrap yourself, please";

6.    assisting the State in laying the predicate with Detective Lucio regarding a video it was trying to enter into evidence;

7.    interrupting Nunez's counsel during cross-examination of Detective Lucio, without any prompting or objections from the state, asking about the relevance of the cross-examination;

8.    informing Nunez's counsel that "I hope you tie it in because I'll never trust you on relevance again";

9.    holding an off-record bench conference with only Nunez's counsel, not the State;

10.    after the State requested to explain why challenged testimony was relevant, commenting, "well, I did that with [Nunez's co-counsel] and he never got relevant";

11. telling Nunez, without any objections by the State, to only answer the question asked and to not provide extra information; and

12. saying, "It's argument, Counsel," when Nunez objected to the State's closing comments;

**1. Comments 1, 2, and 3**

Comments 1, 2, and 3 relate specifically to the trial court's decision to admit expert testimony. A trial court's decision to admit or exclude expert testimony is reviewed for an abuse of discretion. *See Lopez*, 86 S.W.3d at 230; *E.I. du Pont de Nemours & Co., Inc. v. Robinson*, 923 S.W.2d 549, 554 (Tex. 1995); *Kelly v. State*, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992).

Comment 1 concerned the State's expert Edelman. The State began to question Edelman regarding her credentials as an expert in forensic nursing. Nunez objected that the testimony was veering into personal experience as opposed to expert opinion. The State responded that Edelman, as an expert, "can testify about what she's seen in the past in her field." The trial court responded, "Hold on, [counsel for State]. I've got this. [Counsel for Nunez], an expert can opine on many areas of expertise. If she's certainly within the realm of her knowledge, the Court will allow it. Proceed, ma'am. Your objection is overruled." The trial court was merely informing the parties that it had already reached a conclusion concerning the admissibility of the evidence and then briefly explained why it was overruling the objection, indicating that no further argument was needed on the topic.

Concerning comment 2, Nunez had objected to Edelman's testimony, complaining, "I believe this does go outside the scope of her expertise. It's in forensic nursing, not child psychology." The court simply responded, "Yes, but they're intertwined at this point. That

16

will be overruled. Go ahead, ma'am." Likewise, comment 3 was related to Detective Lucio's expert testimony. Nunez objected "to the narrative" and "to relevance." To both objections, the court merely replied, "overruled."

Comments 1, 2, and 3 were not calculated to benefit the State or hurt Nunez; the trial court simply overruled Nunez's objections to the State's expert witnesses and gave brief explanations as to why it was making those decisions. *See Lopez*, 86 S.W.3d at 230; *Robinson*, 923 S.W.2d at 554.[2] These three comments were not improper.

### 2. Comments 6, 7, 8, 10, 11, and 12

Comments 6, 7, 8, 10, 11, and 12 are all examples of the trial court's management of the admissibility and presentation of evidence. *See* TEX. R. EVID. 611(a). For example, comment 6 was related to the trial court "assisting" the State lay the predicate for a video to be admitted into evidence. However, the trial court can exercise reasonable control to manage the admissibility of evidence. *See id*. These comments were not made to bolster the State or diminish Nunez; they did not reflect approval of the State's arguments or disapproval of Nunez's position. *See Simon*, 203 S.W.3d at 590.

Comments 7 and 8 involved the trial court asking about relevance. During Detective Lucio's cross-examination, without any prompting from the State, the trial court intervened:

[Court]:      Counsel, can you—can you help me out here and give us some light on relevance?

[Nunez's
Counsel]:      Yes, Your Honor.

[Court]:      Of the whole process, relevance?

---

[2] Nunez separately challenges the admissibility of Edelman's testimony in issue 6.

[Nunez's
Counsel]:     Yes, Your Honor.  If the Court will give me leeway with about
              two more questions, I'll get to that.

[Court]:      I hope you tie it in because I'll never trust you on relevance
              again.  All right.  I'll give you two more questions.

But again, the trial court can exercise reasonable control to manage the admissibility of evidence.  *See* TEX. R. EVID. 611(a).  The trial court's unprompted inquiry into relevance was not made to bolster the State or diminish Nunez.  *See Simon*, 203 S.W.3d at 590.  The trial court may sua sponte inquire about relevance.  *See Avilez v. State*, 333 S.W.3d 661, 674 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (finding it was not unfair of the trial court to constantly reinforce the importance of relevance).  Thus, comment 7 was not improper or convey bias.

Concerning comment 8, although it was perhaps a poor choice of words by the trial court to tell Nunez's counsel that he would never trust him again on relevance, it was still an exercise of the trial court's duties to oversee the admission of evidence by reinforcing the importance of relevance.  *See id*.  Nunez fails to show how this comment "detrimentally affected his rights."  *Brokenberry*, 853 S.W.2d at 152.  And more importantly, judicial remarks during the course of trial that are critical or disapproving of counsel will not support a partiality challenge unless the comments display "deep-seated favoritism or antagonism that would make judgment impossible."  *Liteky*, 510 U.S. at 556.  Comment 8 does not convey such deep-seated favoritism; therefore, comment 8 did not improperly convey bias.

Comment 10 was made during Nunez's testimony.  The State objected on relevance grounds.  After Nunez's counsel briefly defended its position, the following exchange transpired:

18

| [Court]: | How is that relevant? |
|---|---|
| [Nunez's Counsel]: | If I'm allowed to express, Judge? |
| [Court]: | Well, I did that with [Nunez's other counsel] and he never got relevant. |

The trial court ultimately overruled the State's objection. Once again, the trial court can exercise reasonable control to manage the admissibility of evidence. *See* TEX. R. EVID. 611(a). Here, the State raised the original objection as to relevance and the court followed up on that objection. The trial court's inquiry into relevance was not made to bolster the State or diminish Nunez. *See Simon*, 203 S.W.3d at 590. It was not improper for the trial court to reinforce to the attorneys the importance of sticking to relevant testimony. *See Avilez*, 333 S.W.3d at 674. The trial court's comment about Nunez's counsel did not detrimentally affect Nunez's rights. *See Brokenberry*, 853 S.W.2d at 152. And once again, judicial remarks during the course of trial that are critical of, or hostile to, counsel will not support a partiality challenge unless the comments display "deep-seated favoritism or antagonism that would make judgment impossible." *Liteky*, 510 U.S. at 556. And expressions of "impatience, dissatisfaction, annoyance, and even anger" do not demonstrate bias or impartiality. *Garcia*, 246 S.W.3d at 147. Therefore, we conclude that comment 10 did not convey bias.

Comment 11 was made during Nunez's direct examination:

| [Nunez's Counsel]: | Do you remember speaking to your wife while you were locked up at the Travis County Jail? |
|---|---|
| [Nunez]: | Yes, and she would also visit me. |

[Court]:  Mr. Nunez, you've answered the question. The first answer was yes. That answers the question, okay. So just answer the question. All right. Proceed, [counsel for Nunez]?

Nunez argues that it was improper to tell Nunez, without prompting from the State, to only answer the question asked. However, it is within the court's duties to manage the admissibility of evidence. *See* TEX. R. EVID. 611(a); *Avilez*, 333 S.W.3d at 674 (holding that it was not improper for the trial court to instruct witnesses to limit their responses to the questions asked). This comment was not made to diminish Nunez's case. *See Simon*, 203 S.W.3d at 590.

Likewise, comment 12 was simply a brief explanation of the trial court's reasoning for overruling Nunez's objections to the State's closing arguments. During the closing arguments, the State remarked that Nunez's theories were all just "smoke" and then asserted that "[t]here's zero evidence to support any of [Nunez's] claims." Nunez objected to this commentary as "burden shifting." The trial court overruled the objection. The State continued: "The defendant, when he took the stand, provided no evidence to support his claim." Nunez's counsel once again objected, stating, "Again, Judge, I believe that's burden shifting. It's telling the jury that he's required to bring some evidence." The trial court responded, "Move on. Sustained. Move on. Let's go. It's argument, Counsel." These comments were not calculated to benefit the State or injure Nunez. *See Simon*, 203 S.W.3d at 590. In fact, the trial court sustained Nunez's objection. And expressions of "impatience, dissatisfaction, annoyance, and even anger" do not demonstrate bias or impartiality. *Garcia*, 246 S.W.3d at 147. Therefore, we conclude that comment 12 did not convey bias or detrimentally affect Nunez's rights. *See Brokenberry*, 853 S.W.2d at 152.

20

### 3. Comments 4 and 5

Similarly, comments 4 and 5 did not detrimentally affect Nunez's rights. *See id.* Concerning comment 4, Nunez's counsel raised an objection to part of Detective Lucio's testimony, arguing that the current line of questions was leading Detective Lucio to an "ultimate answer that's for the jury to decide." Then the following exchange occurred:

[Court]: Well, did they go right now? Is it your position that that question took him there?

[Nunez's Counsel]: I think that that's where the detective—

[Court]: No, I didn't ask you—I did not ask you what you thought. I asked is that what you're telling me?

The trial court's comment was made in the context of trying to figure out Nunez's counsel's exact objection. This statement was not calculated to benefit the State or injure Nunez. *See Simon*, 203 S.W.3d at 590. And expressions of "impatience, dissatisfaction, annoyance, and even anger" do not demonstrate bias or impartiality. *Garcia*, 246 S.W.3d at 147. Therefore, comment 4 did not convey bias.

Comment 5 transpired during cross-examination of Detective Lucio. Nunez's counsel accidentally referred to S.C. when he intended to refer to A.G. The following exchange occurred:

[State]: Your Honor, I'm going to object just for clarification. He called the witness [S.C.].

[Nunez's Counsel]: I'm sorry, [A.G.].

[State]: Just want to make sure the record is clear.

[Court]: You are getting pretty wrapped up in your questions, aren't you?

21

[Nunez's
Counsel]:     Yes, Your Honor.

[Court]:      Well, unwrap yourself, please.

[Nunez's
Counsel]:     I'll withdraw the question, Judge.

Although perhaps a poor choice of words, telling Nunez's counsel to "unwrap" does not reflect a "disbelief in the defense's position" or an attempt to "diminish[] the credibility of the defense's approach to the case." *Id*. We fail to see how this comment detrimentally affected Nunez's rights. *See Brokenberry*, 853 S.W.2d at 152. And more importantly, judicial remarks during the course of trial that are critical or disapproving of, or even hostile to, counsel will not support a partiality challenge unless the comments display "deep-seated favoritism or antagonism that would make judgment impossible." *Liteky*, 510 U.S. at 556.

### 4. Comment 9

Comment 9 was outside the presence of the jury and off the record and thus could not improperly influence the jury. *See Strong v. State*, 138 S.W.3d 546, 553 (Tex. App.—Corpus Christi 2004, no pet.) (concluding that the trial court's comments could not unfairly influence the jury because the comments were made outside of the jury's presence).

### 5. Summary

We conclude that none of the alleged improper comments detrimentally affected Nunez's rights. *See Brokenberry*, 853 S.W.2d at 152. None of the trial court's comments displayed a "deep-seated favoritism or antagonism that would make judgment impossible." *Liteky*, 510 U.S. at 556. And looking at the cumulative effect of all of the comments by the trial court, we have a fair assurance that any alleged error did not

22

"influence the jury, or had but a slight effect." *Simon*, 203 S.W.3d at 593. We overrule Nunez's fourth issue.

## VI. MOTION FOR CONTINUANCE

In Nunez's fifth issue, he contends that the trial court abused its discretion in denying his motion for continuance when Nunez was presented with *Brady* evidence the morning the trial was to begin.

### A. Standard of Review and Applicable Law

Generally, to preserve the denial of a motion for continuance for appellate review, a sworn written motion for continuance is required. *See Anderson v. State*, 301 S.W.3d 276, 279 (Tex. Crim. App. 2009). However, "[i]f a trial court's decision to not grant an oral unsworn motion amounts to a denial of fundamental principles of due process, the ruling is subject to appellate review." *O'Rarden v. State*, 777 S.W.2d 455, 459 (Tex. App.—Dallas 1989, pet. ref'd). The trial court's decision to grant or deny an oral, unsworn motion for continuance on equitable grounds will only be overturned for a clear abuse of discretion. *See Munoz v. State*, 24 S.W.3d 427, 432 (Tex. App.—Corpus Christi 2000, no pet.).

"The State has an affirmative duty to disclose exculpatory evidence that is material either to guilt or punishment." *Perez v. State*, 414 S.W.3d 784, 789 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). To establish a due process violation under *Brady*, the defendant must show: (1) the suppression of evidence by the prosecution; (2) the suppressed evidence was favorable to the defendant; and (3) the materiality of the suppressed evidence. *See Perez*, 414 S.W.3d at 789. Evidence is "material" when there is a reasonable probability that the result of the

23

proceeding would have been different had the evidence been disclosed. *See Ex parte Carty*, 543 S.W.3d 149, 180 (Tex. Crim. App. 2018).

**B. Analysis**

On November 14, before the trial began, Nunez asked the court to grant a mistrial or continuance on the basis that he had just received *Brady* material from the State that morning at approximately 6:00 a.m. via e-mail. *See Brady*, 373 U.S. at 87. The *Brady* material was from an interview the State had just conducted with A.G. the day before. The interview revealed new allegations that Nunez had not only touched her breast but also her vagina. Nunez orally requested a continuance, but the trial court denied the continuance and Nunez's subsequent motion for mistrial; however, the trial court allowed Nunez to have a running objection to the *Brady* material. Because Nunez's motion for continuance was oral, we will only overturn the trial court's decision if the trial court clearly abused its discretion. *See Munoz*, 24 S.W.3d at 432.

Nunez first contends that the State negligently suppressed evidence by failing to interview A.G. prior to the day before trial. However, this is not a case where the State received *Brady* evidence but then sat on it and failed to turn it over to the defense. *See Perez*, 414 S.W.3d at 789. Instead, the State explained to the trial court that it had tremendous difficulty in meeting with A.G. because her father did not want her to participate in the trial. The State ultimately had to subpoena A.G. and her father to come in for an interview. The State exercised due diligence in conducting the interview and promptly turned the evidence over to Nunez the next day. *See id*. *Brady* material can even be turned over to the defendant during trial as long as the defendant "received the material in time to put it to effective use at trial." *Id*. In the present case, A.G. was a

24

witness at the trial subject to cross-examination, meaning Nunez had ample opportunity to cross-examine A.G. concerning her allegations. *See id.*

Lastly and most importantly, Nunez does not show how the outcome of the trial would have been any different had the motion for continuance been granted. *See Ex parte Carty*, 543 S.W.3d at 180 (Walker, J., concurring). Nunez fails to explain how this evidence was material for *Brady* purposes. In other words, Nunez does not explain how this evidence would "make the difference between conviction and acquittal." *Pena v. State*, 353 S.W.3d 797, 811 (Tex. Crim. App. 2011). Therefore, we cannot conclude that denying Nunez's oral motion for continuance denied him the fundamental principles of due process. *See Munoz*, 24 S.W.3d at 431. The trial court did not abuse its discretion in denying his motion for continuance. We overrule Nunez's fifth issue.

## VII. EXPERT TESTIMONY

In his sixth issue, Nunez argues that the trial court abused its discretion in allowing Edelman to testify on subjects outside her expertise.

### A. Standard of Review and Applicable Law

The decision to admit scientific evidence is reviewed for an abuse of discretion. *See Bigon v. State*, 252 S.W.3d 360, 367 (Tex. Crim. App. 2008); *Hinojosa v. State*, 4 S.W.3d 240, 251 (Tex. Crim. App. 1999). However, "[a] criminal conviction should not be overturned for non-constitutional error under Rule 44.2(b) if the appellate court, after examining the record as whole, has fair assurance that the error did not influence the jury, or had only a slight effect." *Johnson v. State*, 967 S.W.2d 410 at 417 (Tex. Crim. App. 1998); *see Trevino v. State*, 228 S.W.3d 729, 743 (Tex. App.—Corpus Christi 2006, pet. ref'd) ("Rule 44.2(b) requires us to examine error in relation to the entire proceeding and

determine whether it had a substantial and injurious effect or influence in determining the jury's verdict.").

The admissibility of expert testimony is governed by Texas Rule of Evidence 702. Under Rule 702, a trial court's first task is "to determine whether the testimony is sufficiently reliable and relevant to help the jury in reaching accurate results." *Kelly*, 824 S.W.2d at 572; *see* TEX. R. EVID. 702; *Wolfe v. State*, 509 S.W.3d 325, 335 (Tex. Crim. App. 2017). If the trial judge finds that the proposed expert testimony meets the requirements of Rule 702, then the judge performs a Rule 403 analysis to determine if the evidence should be presented to the jury. *See Kelly*, 824 S.W.2d at 572. Under Rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of one or more factors, including the danger of unfair prejudice or misleading the jury. *See* TEX. R. EVID. 403.

## B. Analysis

During trial, Nunez made several objections to Edelman's testimony, such as complaining she had no personal knowledge, she was testifying outside the realm of her expertise, and she was simply there to "bolster the State's case." On appeal, Nunez does not argue that Edelman's testimony should have been excluded under Rule 702; Nunez instead asserts that her testimony should have been excluded under Rule 403 because the probative value of her testimony was substantially outweighed by the danger of unfair prejudice. *See id.* More specifically, he complains that experts "should not be allowed to give their opinion on the accuracy, reliability, or credibility of a particular witness in the case being tried." *Schutz v. State*, 957 S.W.2d 52, 67 (Tex. Crim. App. 1997).

26

During cross-examination, Nunez's counsel asked Edelman if there was any physical evidence of sexual assault. Edelman responded by confirming that there was no physical evidence:

[Nunez's
Counsel]:     In other words, the exam itself didn't lead to any evidence one
              way or the other?

[Edelman]:    Well, the sexual assault exam did because we have a patient
              history.

Edelman was not giving her opinion on the child complainant's truthfulness or credibility; she merely commented that the child complainant's testimony constituted some evidence of sexual assault, even though there was no physical evidence of assault. *See id*. Nothing in the record suggests that the probative value of this comment or anything else Edelman said was outweighed by one of the Rule 403 factors. *See* Tex. R. Evid. 403.

Given the number of witnesses who testified against Nunez, some of whom gave much more graphic depictions of the allegations, Edelman's testimony did not have a substantial or injurious effect upon the jury verdict. *See Llamas v. State*, 12 S.W.3d 469 at 471 (Tex. Crim. App. 2000). Even if there was any error in admitting Edelman's testimony, we have a fair assurance that it did not affect the jury or that it only had a slight effect. *See Johnson*, 967 S.W.2d 410 at 417. We overrule Nunez's sixth issue.

## VIII. CLOSING STATEMENTS

In his seventh issue, Nunez argues that the trial court committed reversible error when it allowed the State to make allegedly improper closing arguments during both the guilt-innocence and punishment phases of the trial.

**A. Standard of Review and Applicable Law**

27

"Proper jury argument includes four areas: (1) summation of the evidence presented at trial, (2) reasonable deduction drawn from that evidence, (3) answer to the opposing counsel's argument, or (4) a plea for law enforcement." *Jackson v. State*, 17 S.W.3d 664, 674 (Tex. Crim. App. 2000). The State may properly comment on a defendant's failure to produce evidence, as long as the remarks do not fault the defendant for failing to testify. *See id*.; *Patrick v. State*, 906 S.W.2d 481, 491 (Tex. Crim. App. 1995); *Orellana v. State*, 381 S.W.3d 645, 656 (Tex. App.—San Antonio 2012, pet. ref'd) (observing that it does not inappropriately shift the burden of proof when the State comments on the defendant's failure to present favorable evidence).

Even when the State makes improper arguments, the error is only reversible if the argument is "extreme or manifestly improper." *See Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008). A defendant fails to preserve error regarding improper jury argument if the defendant fails to object to the prosecutor's arguments. *Threadgill v. State*, 146 S.W.3d 654, 667 (Tex. Crim. App. 2004) (citing *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996) (en banc)). "Absent an objection, a defendant waives error unless the error is fundamental—that is, the error creates egregious harm. Egregious harm is such harm that a defendant has not had a fair and impartial trial." *See Ganther v. State*, 187 S.W.3d 641, 650 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (internal citations omitted).

## B. Analysis

### 1. First Statement

Nunez first complains of the State's comment during closing argument in the guilt-innocence phase, which Nunez believes attempted to inappropriately shift the burden.

28

The State said, "[t]he defendant, when he took the stand, provided no evidence to support his claim," referring to Nunez's defensive claim that the accusations were fabricated because S.C. was jealous. This comment did not fault Nunez for exercising his right to not testify; to the contrary, the State properly highlighted the fact that Nunez took the stand and yet failed to produce evidence of S.C.'s alleged jealousy. This reference to Nunez's failure to produce witnesses or evidence was not improper. *See Orellana*, 381 S.W.3d at 656.

### 2. Second Statement

Next, Nunez argues that the State actively negated an element of the offense of indecency with a child when the State said, "[a]nd the defense attorney is like, 'Why would he get any enjoyment?' It's not the enjoyment of having the sex. It's the enjoyment of controlling a fourth grader, of controlling a [sic] touching a third grader." Namely, Nunez contends that this statement negated the fact that he committed the offense with the specific intent to gratify his sexual desire. Nunez did not object to this statement, and so Nunez waived any possible error related to this statement unless it caused Nunez to suffer egregious harm. *See Ganther*, 187 S.W.3d at 650.

However, as we mentioned in our legal sufficiency discussion, the jury could easily infer the elements of indecency with a child based on Nunez's conduct, including that he touched her with the intent to arouse or gratify his sexual desires, notwithstanding the State's comments during closing argument. *See Connell*, 233 S.W.3d at 467. This statement by the State did not egregiously harm Nunez. *See Ganther*, 187 S.W.3d at 650. Therefore, Nunez has waived any error related to this statement. *See id*.

### 3. Third Statement

29

Lastly, Nunez asserts that the State improperly referenced Nunez's failure to testify. Even though Nunez testified during the guilt-innocent phase, he did not testify during the punishment phase. The State then told the jury, "This man laughed. He doesn't mean anything. He has taken zero responsibility. He has shown zero remorse for anything that he did." Nunez did not object to this statement. Therefore, Nunez has not preserved error and has waived any error on this issue unless this statement caused egregious harm. *See Threadgill*, 146 S.W.3d at 667; *Ganther*, 187 S.W.3d at 650.

Saying the defendant "has not taken responsibility for his crime" during the closing argument of the punishment phase of trial can be a "permissible summation of the evidence" concerning the defendant's alibi testimony. *Randolph v. State*, 353 S.W.3d 887, 895 (Tex. Crim. App. 2011). In other words, saying the defendant has not taken responsibility is not necessarily a reference to the defendant's failure to testify, and thus it is not per se improper for the State to make this argument. *See id*.

On the other hand, it can be improper for the State to reference the defendant's current lack of remorse because it "highlight[s] for the jury the appellant's failure to take the stand and claim present remorse." *See Snowden v. State*, 353 S.W.3d 815, 824 (Tex. Crim. App. 2011). However, like in *Snowden*, the State's comments about Nunez's lack of remorse "did not move the jury from a state of non-persuasion to a state of persuasion on any material issue in the case." *See id*. at 825. The State's comment about his lack of remorse was isolated and never repeated or emphasized. The third complained-of statement did not egregiously harm Nunez; accordingly, Nunez has waived any error. *See Threadgill*, 146 S.W.3d at 667; *Ganther*, 187 S.W.3d at 650.

**4. Summary**

30

We conclude that Nunez waived his complaints as to statements two and three because Nunez did not object to the trial court and those statements did not cause him egregious harm. *See Threadgill*, 146 S.W.3d at 667; *Ganther*, 187 S.W.3d at 650. And the first complained-of comment was not improper. *See Jackson v. State*, 17 S.W.3d 664, 674. Furthermore, none of the State's arguments were "extreme or manifestly improper." *Brown*, 270 S.W.3d at 570. We overrule Nunez's seventh issue.

## IX. JURY INSTRUCTIONS

In his eighth and final issue, Nunez argues that the trial court committed reversible error by failing to give the jury proper instructions for a specific intent offense and the necessity of returning a unanimous verdict.

### A. Standard of Review and Applicable Law

Unobjected-to charge error requires reversal only if it resulted in "egregious harm." *Neal v. State*, 256 S.W.3d 264, 278 (Tex. Crim. App. 2008). "Harm is egregious if it deprives the appellant of a fair and impartial trial." *Id*.; *see Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008) ("[J]ury charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory.").

Applying the egregious harm test requires considering (1) the jury charge, (2) the state of the evidence, (3) the parties' arguments, and (4) all other relevant information in the record. *See Allen v. State*, 253 S.W.3d at 264. "If the charge error caused the jury . . . to render a less-than-unanimous verdict on an issue on which unanimity is required, the charge error is egregiously harmful." *Swearingen v. State*, 270 S.W.3d 804, 812 (Tex. Crim. App. 2008).

**B. Analysis**

Nunez failed to object to the alleged jury charge error; therefore, Nunez must show that any alleged error caused him egregious harm. *See Neal*, 256 S.W.3d at 278. We conclude that Nunez was not egregiously harmed.

Nunez first complains that the jury charge failed to inform the jury that the mental states of "intentionally" and "knowingly" only apply to count one, not count two; in other words, on count one, the State needed to show that Nunez acted knowingly or intentionally, whereas on count two, the State needed to show that Nunez acted with the specific intent to arouse or gratify his sexual desire, not that he acted knowingly or intentionally. *See* TEX. PEN. CODE ANN. §§ 22.021(a)(2)(B), 21.11(a)(1). Nunez relies on a previous decision from our court for this proposition. *See Rodriguez v. State*, 24 S.W.3d 499, 502 (Tex. App.—Corpus Christi 2000, pet. ref'd). In *Rodriguez*, the jury charge instructed the jury to find the defendant guilty if it found beyond a reasonable doubt that the defendant had acted "with intent to arouse or gratify the sexual desire of said defendant, intentionally or knowingly." *Id*. We found that this was an error because including knowingly or intentionally "could have allowed the jury to find him guilty of indecency with a child without the specific intent to arouse or gratify his sexual desire." *Id*. Like the present case, the defendant in *Rodriguez* did not object and so we performed an egregious error analysis. Ultimately, we concluded:

> The victim testified that while alone with appellant, he touched her on her breast and told her to kiss him. This evidence is plainly sufficient to establish the requisite intent. Additionally, there was no evidence of circumstances that would have led the jury to find that appellant had not acted with the specific intent necessary to complete the crime. Appellant therefore has not demonstrated that the error in the jury charge caused him egregious harm.

32

*Id.* at 503. We come to the same conclusion in the current case. A.G. testified that Nunez touched her breast and vagina under circumstances that were plainly sufficient to establish the requisite intent. *See id.* Therefore, Nunez has not demonstrated that any error in the jury charge caused him egregious harm. *See Neal*, 256 S.W.3d at 278.

Nunez also complains that jury charge error occurred because there was no mention of unanimity in the application paragraph as to which incident the jury agreed occurred to convict Nunez on the indecency with a child offense. *See Cosio v. State*, 353 S.W.3d 766, 771 (Tex. Crim. App. 2011) ("Unanimity means that the jury must agree upon a single and discrete incident that would constitute the commission of the offense alleged."). The State also never called attention to the fact that the jury needed to unanimously agree on a specific incident. Nunez argues this constituted egregious error.

In *Cosio*, the case relied on by Nunez, the Texas Court of Criminal Appeals concluded that there was an error because the jury charge allowed for a non-unanimous verdict. *See id.* at 777. However, the Court, in conducting its egregious harm analysis, observed:

> neither of the parties nor the trial judge added to the charge errors by telling the jury that it did not have to be unanimous about the specific instance of criminal conduct in rendering its verdicts. This factor therefore does not weigh in favor of finding egregious harm.

> Finally, [the complainant's] testimony detailed each of the four incidents and the various separate instances of criminal conduct involved in each incident. Her testimony was not impeached. Cosio's defense was that he did not commit any of the offenses and that there was reasonable doubt as to each of the four incidents because [the complainant] was not credible and the practical circumstances surrounding the incidents of criminal conduct did not corroborate [the complainant's] testimony. His defense was essentially of the same character and strength across the board. The jury was not persuaded that he did not commit the offenses or that there was any reasonable doubt. Had the jury believed otherwise, they would have acquitted Cosio on all counts. On this record, therefore, it is logical to

33

suppose that the jury unanimously agreed that Cosio committed all of the separate instances of criminal conduct during each of the four incidents. It is thus highly likely that the jury's verdicts . . . were, in fact, unanimous. Accordingly, actual harm has not been shown, and we cannot say that Cosio was denied a fair and impartial trial.

*Id.* We find the analysis in *Cosio* is equally applicable here. Nothing in the record before us indicates that the trial court or the jury charge instructed the jury that it did not have to be unanimous. A.G. gave her testimony regarding the alleged incidents of sexual assault. Nunez generally argued that he did not commit any of the alleged offenses; thus, his defense was of the same nature and strength across the board. However, the jury rejected this argument and found Nunez guilty, suggesting that they unanimously believed that he committed all of the separate instances of criminal conduct because otherwise they would have acquitted Nunez. *See id.* Just as it was in *Cosio*, it is logical to suppose that the jury's verdict in Nunez's case was unanimous. *See id.* Therefore, Nunez has not demonstrated actual harm, and we cannot say that Nunez was denied a fair and impartial trial. *See id.* ("An egregious harm determination must be based on a finding of actual harm rather than theoretical harm."); *Swearingen*, 270 S.W.3d at 812; *Hutch*, 922 S.W.2d at 171. We overrule Nunez's eighth issue.

## X. CONCLUSION

We affirm the trial court's judgment.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
25th day of April, 2019.