**Opinion issued August 22, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-00950-CR

————————————

**BLAS GARZA PEREZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 176th District Court**
**Harris County, Texas**
**Trial Court Case No. 1272117**

---

# O P I N I O N

Blas Garza Perez was convicted of possession with intent to deliver methamphetamine[1] and a jury assessed his punishment at fifteen years'

---

[1]    TEX. HEALTH & SAFETY CODE ANN. § 481.102(6), .112 (a), (f) (West 2010).

incarceration and a $2,500 fine. Perez contends that the trial court erred by not ordering the disclosure of the true identity and background of a confidential informant in violation of Texas Rule of Evidence 508, and that the State violated *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963) by withholding such information.

We affirm.

### Factual Background

Houston Police Department Officer Valles is an undercover narcotics officer who regularly uses confidential informants to set up drug buys at which he poses as the buyer. Valles was introduced to appellant by Rene Garcia, a confidential informant who had been working with Valles for the previous four years. At their first meeting, Valles told appellant that he sought two kilograms of cocaine and appellant assured Valles that he thought he could arrange that. Although the transaction failed to go as planned because the seller's men brought methamphetamine instead of cocaine, appellant was ultimately able to arrange for Valles to purchase a large amount of crystal methamphetamine.

Appellant, who took the stand in his own defense, acknowledged that he had facilitated Valles' purchase of the methamphetamine, but testified that he only did so because Valles and his "close" friend "Rene Flores," who was working with Valles as a confidential informant, led him to believe that he was also working for

2

the police as a second confidential informant on the case. Appellant had only known "Rene" for eight to ten months before his arrest. During those months, Rene had asked appellant on several occasions if he knew anyone who would sell him a large amount of narcotics. Rene initially asked appellant if he knew anyone selling marijuana; appellant did not know of anyone. When appellant was unable to help him buy marijuana, Rene told appellant that he had a criminal case pending against him, he was working with the police, and he needed appellant to help him set up a drug purchase by an undercover narcotics agent in order to avoid going to prison.

Appellant testified that he agreed to meet with the undercover officer with whom Rene worked, so Rene arranged a meeting. According to appellant, Valles told him at that first meeting that "there would be no problem, if [appellant] would find someone that was selling drugs." Appellant told Valles that he did not know anyone selling narcotics, but he would try to find someone. Despite his statements to Valles, appellant never made any attempt to locate a seller.

According to appellant, Rene, with his four children in tow, subsequently showed up at the home appellant shared with his daughter and begged appellant to help him. Rene told appellant that he could not go to prison because his wife had cancer, and if something happened to her, there would be no one left to care for their children. According to Rene, Valles was putting a lot of pressure on him to

set up the undercover narcotics buy. Moved by Rene's situation, appellant, whose own wife had died of cancer eleven years before, told Rene that he was going to try to help him, but he needed to talk to Valles again, "because otherwise [appellant] would get involved in problems." According to appellant, Rene told him that the police could give him up to $5,000 for putting them in contact with the drug dealers.

Appellant testified that after his conversation with Rene, he made several phone calls to relatives, trying to get in contact with one of his cousins in Mexico. At that second meeting, appellant contacted his cousin in Mexico, using a walkie-talkie that Valles provided, and he asked him if he knew anyone with a large amount of cocaine to sell. Even though his cousin only owned a taco truck, appellant thought that he could help him because, according to appellant, everyone in Mexico knows where to buy drugs.[2] Appellant told his cousin that he was cooperating with the police and that he would split the $5,000 with him. Appellant's cousin found a supplier who sent two men to Houston with the narcotics that Valles ultimately purchased. Appellant did not know the two men transporting the narcotics nor had he ever spoken with either of them before they arrived in Houston. Appellant testified that he had not seen Rene since he was arrested and he did not know where to find him.

_____

[2] Appellant's cousin and the cousin's son disappeared after appellant was arrested.

Valles was called as a rebuttal witness and denied ever agreeing to use appellant as a confidential informant or offering appellant any incentives to participate in the drug deal.

**Procedural Background - Disclosure of True Identity of "Rene Flores"**

After the private investigator appointed to assist in his defense was unable to locate the man appellant knew as "Rene Flores," appellant filed a pre-trial motion to disclose the identity of the confidential informant, his criminal history, and any incentives he was offered or received for his cooperation with HPD. Judge Shawna Reagin held a hearing on this and other pretrial motions at which appellant's counsel informed the court that she planned to assert an entrapment defense based on the fact that Valles and the confidential informant had offered appellant money if he would assist them by acting as a second informant in the investigation. Judge Reagin informed the parties that she saw "this as more of a *Brady* type situation,"[3] rather than a typical confidential informant situation. The judge reasoned, "He's not really a [confidential informant] because [appellant] knows who it was." Although she acknowledged that appellant knew him, appellant's counsel argued that "Rene Flores" was a "confidential informant because we don't know how to get in touch with him." Judge Reagin subsequently held an in-camera hearing on the motion during which time she met with Valles

---

[3]     *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963).

and his supervisor. When asked if appellant knew the informant, Valles told the trial court that the two men met several weeks before Valles was introduced to appellant. According to Valles, the informant and appellant did not know each other beforehand, but became friends during the investigation.

After the in-camera hearing, Judge Reagin denied appellant's motion. Three days later, appellant filed a motion to reconsider the motion to disclose and three days after that, appellant filed a motion to disclose the true name of the informant, and a motion for continuance or, in the alternative, a motion to dismiss, arguing that the information sought was not only subject to disclosure under Texas Rule of Evidence 508, but it was also exculpatory evidence that the State was required to disclose under *Brady v. Maryland*. *See* 373 U.S. 83, 83 S.Ct. 1194 (1963) (requiring that State turn over material, favorable evidence to defendant).

Prior to opening statements, Judge Jay Burnett, the visiting judge who presided over appellant's trial, considered appellant's motion to disclose. Judge Burnett declined to rule on the motion at that time and held his decision in abeyance. Valles testified for the State later that day. When appellant's attorney asked Valles if he knew a man named "Rene Flores," the State objected that this was an improper attempt to unmask a confidential informant. Judge Burnett stated that he was sustaining the State's objection for the moment and that he would consider this issue further over lunch. After lunch, Judge Burnett stated on the

record that he had reviewed the applicable case law with regard to confidential informants and he was not in position to "go behind" Judge Reagin's earlier ruling. He further stated that he would continue to keep an open mind and he would reconsider his ruling, if any new facts disclosed during trial warranted such a result.

The following morning, Judge Burnett stated that he had reviewed a transcript of the in-camera proceeding and reiterated that his ruling had not changed, but that he would continue to keep an open mind and would reconsider the motion if the facts warranted it. Later that same day, appellant's counsel made an informal bill of review in which she summarized the testimony she believed that appellant would have elicited from "Rene"—had he been available to testify. Judge Burnett denied appellant's motion to disclose. Appellant then took the stand and told basically the same version of events that his counsel proffered that "Rene" would have testified to.

During a brief recess at the end of the day, Judge Burnett swore in a member of the audience. The man, who identified himself as Rene Garcia Salazar, was informed that the court would reconvene the next morning and that he was ordered to be there—"you just come, give your testimony, no problem." After appellant's testimony concluded the next morning, the State recalled Valles as a rebuttal

witness. During this testimony Valles revealed the name and current location of the confidential informant:

> Q (By State). Officer, who did you bring with you to court yesterday?
>
> A. I brought my confidential informant.
>
> Q. What is that confidential informant's name, please?
>
> A. His name is Rene Garcia.
>
> Q. Who did you bring to court with you today, please?
>
> A. The confidential informant.
>
> Q. Rene Garcia?
>
> A. Yes, sir.

At that point, a Hispanic male briefly entered the courtroom with the bailiff. After he left, the State asked Valles one last question, "Who was that that just entered the courtroom, sir?" Valles replied, "That's the confidential informant, René Garcia." Defense counsel did not cross-examine Valles about revealing the identity of the confidential informant, with the following exception:

> Q. (By Appellant's Counsel) And two days ago when you testified, I asked you, or tried to get information from you about this confidential informant, didn't I?
>
> A. Yes, ma'am.
>
> Q. And you refused to give it to me, didn't you?
>
> A. Yes, ma'am.
>
> Q. Because, among other things, you said it's too dangerous to give me that information. Do you remember testifying to that?

8

A.    Yes, ma'am.

Q.    And yet today two days later, here he is?

A.    Yes, ma'am.

Appellant's Counsel: Pass the witness.

The State rested its case after Valles' rebuttal testimony concluded. After the jury was removed, the judge asked appellant's counsel if she wanted to call the confidential informant and she replied, "You know, Judge, after all of this I'm ready to rest as well." The defense rested without calling Rene to the stand or requesting a continuance.

## Standard of Review

In one issue on appeal, Perez contends that the trial court erred by not ordering the disclosure of the true identity of "Rene Flores" and his background in violation of Texas Rule of Evidence 508, and that the State's failure to disclose the true identity of the "Rene Flores," his criminal history, and any incentives he was offered or received for his cooperation with HPD constitutes a *Brady* violation. *See Brady*, 373 U.S. at 87, 83 S.Ct. at 1196–97 (requiring that State turn over material, favorable evidence to defendant).

We review the trial court's ruling on a confidential-informant motion for abuse of discretion. *Sanchez v. State*, 98 S.W.3d 349, 356 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). We will disregard any error, however, unless it affected the defendant's substantial rights. Tex. R. App. P. 44.2(b); *Sanchez*, 98

9

S.W.3d at 356–57 (stating trial court's failure to order disclosure of confidential informant's identify is non-constitutional error governed by TEX. R. APP. P. 44.2(b)); *see also Heard v. State*, 995 S.W.2d 317, 321 (Tex. App.—Corpus Christi 1999, pet. ref'd) (holding trial court's failure to disclose confidential informant's identity must be analyzed under "substantial right test"). A substantial right is affected when the error had a substantial and injurious effect or influence on the judgment. *Sanchez*, 98 S.W.3d at 357.

The State has an affirmative duty to disclose exculpatory evidence that is material either to guilt or punishment. *Brady*, 373 U.S. at 86, 83 S.Ct. at 1196. The State's duty to reveal *Brady* material attaches when the information comes into its possession, not when it is requested. *Thomas v. State*, 841 S.W.2d 399, 407 (Tex. Crim. App. 1992). To establish a due process violation under *Brady*, a defendant must show the following: (1) evidence was suppressed; (2) the suppressed evidence was favorable to the defendant; and (3) the suppressed evidence was material to either guilt or punishment. *Fox v. State*, 175 S.W.3d 475, 490 (Tex. App.—Texarkana 2005, pet. ref'd).

When the *Brady* material is discovered during trial, the initial inquiry is whether the defendant was prejudiced by the delayed disclosure. *Palmer v. State*, 902 S.W.2d 561, 565 (Tex. App.—Houston [1st Dist.] 1995, no pet.); *see also Little v. State*, 991 S.W.2d 864, 867 (Tex. Crim. App. 1999) (reasoning that to

prevail on a *Brady* claim, defendant must show that State's tardy disclosure prejudiced defendant). To show prejudice, the defendant must show a reasonable probability that, had the evidence been disclosed to the defense earlier, the result of the proceeding would have been different. *Little*, 991 S.W.2d at 866. The disclosure of *Brady* material during trial satisfies the requirements of due process "[i]f the defendant received the material in time to put it to effective use at trial." *Palmer*, 902 S.W.2d at 565. A defendant's conviction should not be reversed simply because the *Brady* material was not disclosed as early as it might have and should have been. *Id.* When *Brady* material is disclosed at trial, the defendant's failure either to object to the admission of the evidence on this basis or to request a continuance waives the error "or at least indicates that the delay in receiving the evidence was not truly prejudicial." *See Apolinar v. State*, 106 S.W.3d 407, 421 (Tex. App.—Houston [1st Dist.] 2003), *aff'd on other grounds*, 155 S.W.3d 184 (Tex. Crim. App. 2005) (holding that failure to request continuance waives complaint that State withheld exculpatory evidence in violation of *Brady*); *see also Smith v. State*, 314 S.W.3d 576, 586 (Tex. App.—Texarkana 2010, no pet.) (holding *Brady* challenge not preserved because trial court never ruled on complaint); *Jones v. State*, 234 S.W.3d 151, 158 (Tex. App.—San Antonio 2007, no pet.) (holding that defendant must request continuance and present *Brady* complaint in motion for new trial to preserve complaint for appellate review);

11

*Young v. State*, 183 S.W.3d 699, 706 (Tex. App.—Tyler 2005, pet. ref'd) ("The failure to request [a continuance] waives any *Brady* violation, as well as any violation of a discovery order.").

**Discussion**

At the eleventh hour of trial, the State voluntarily disclosed the identity of its informant. Indeed, the reporter's record clearly reflects that the confidential informant, whose real name is "Rene Garcia Salazar," was present for at least two days of the five-day trial. "Rene Garcia Salazar" was sworn in, in open court, on the third day of trial. While Valles was testifying during the State's rebuttal case the next day, the State had this same man, "Rene Garcia Salazar," walk into the courtroom. Valles testified, "That's the confidential informant, Rene Garcia."

Appellant did not object to this line of questioning. Even if appellant's counsel did not realize who the confidential informant was the day before, after Valles' testimony there can be no doubt that everyone in the courtroom, including appellant and his counsel, knew the identity of the confidential informant as well as his location (i.e., just outside of the courtroom). Appellant had ample opportunity to either call the confidential informant as a witness at trial, or, at the very least, to request a continuance in order to meet with him to determine whether he wanted to call the man to testify at trial. Appellant did neither. Instead, appellant rested his case.

Because appellant neither objected to Garcia Salazar's in-court identification nor requested a continuance, his *Brady* complaint is waived. *See Apolinar*, 106 S.W.3d at 421; *Smith*, 314 S.W.3d at 586; *Jones*, 234 S.W.3d at 158; *Young*, 183 S.W.3d at 706.

Although we have not found any opinions expressly applying this rationale to Rule 508 allegations, we conclude that the logic underlying this well-established preservation issue is equally applicable to appellant's Rule 508 argument. When the State voluntarily discloses a confidential informant's identity for the first time at trial, as was the case here, the defendant must either object or request a continuance in order to preserve a Rule 508 violation for appellate review. Because appellant did neither, his Rule 508 allegation is also waived.

We overrule appellant's sole issue.

## Conclusion

We affirm the trial court's judgment.

Jim Sharp
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.

Publish. TEX. R. APP. P. 47.2(b).