

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

Nos. 04-22-00080-CR & 04-22-00081-CR

James **RISO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 454th Judicial District Court, Medina County, Texas
Trial Court Nos. 21-06-14106-CR & 21-06-14107-CR
Honorable Daniel J. Kindred, Judge Presiding

Opinion by:    Rebeca C. Martinez, Chief Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                Patricia O. Alvarez, Justice
                Beth Watkins, Justice

Delivered and Filed: June 21, 2023

AFFIRMED

A jury convicted James Riso of deadly conduct and evading arrest with a vehicle. On appeal, Riso argues his convictions should be overturned because the State made an improper closing argument and because the trial court erred by admitting evidence not previously disclosed. We overrule Riso's two issues and affirm.

### BACKGROUND

Riso was indicted for deadly conduct and evading arrest with a vehicle. *See* TEX. PENAL CODE ANN. §§ 22.05, 38.04. The case proceeded to a jury trial during which the State called nine

witnesses. Dalton Rogers testified that, on July 16, 2020, he saw a white pickup truck approach the property Rogers lived on at that time. Rogers recognized the truck as Riso's. Rogers testified that he ran to the back of the property where the vehicle was approaching. The driver of the truck placed a rifle outside of the driver's side window, and, two seconds later, Rogers heard a gunshot. Next, the driver exited the truck and placed the rifle on his shoulder. Rogers dove to the fence line, and, as he took a step, he heard another shot fired. Rogers testified that the bullet whistled past his ear, and he saw dirt fly fifteen feet behind him. According to Rogers, the truck was thirty yards from him on the other side of the property's fence. Rogers testified that he had no doubt that the man who fired was Riso. After firing the second shot, the driver returned to the truck and left.

Mason Perez was also on the property that day. He testified he saw Riso's truck arrive, saw Rogers dive, and heard two gunshots. Mason telephoned his mother, Brandy Perez, to inform her that Riso was "back" at the property.[1] Mason testified that he did not actually see Riso that day, but he saw Riso's truck. Brandy testified that her son called her, and she called the Medina County Sheriff's Office. She also testified that her family had purchased the property from Riso's father in 2017, and, after purchase, the Perez family had problems with Riso coming to the property.

Deputy Jay Jackson testified that he responded to calls for shots fired. In the course of responding, Deputy Jackson observed a white pickup truck he knew to be Riso's truck. Deputy Jackson testified that he got a good look at the driver from approximately twenty to twenty-five feet away and that he had no doubt the driver was Riso. Jackson activated his lights and siren. After a chase over approximately eight to ten miles lasting eight to ten minutes, Jackson came upon Riso's truck. The truck had lost a part of its undercarriage and was abandoned.

---

[1] To avoid confusion, we refer to Mason and Brandy Perez by their first names.

Deputy Garrett Wright testified that he also responded to the call for shots fired. He first came upon the white pickup truck after it had been abandoned. He inspected the vehicle and found an empty box of ammunition and a single 22-caliber bullet casing on the driver's side floor. The trial court admitted video from Wright's body-worn camera and a low-quality photograph created from the video. The State asserts the video and photograph depict the spent casing.

Next, Deputy Jesse Mike testified that he too responded to the call for shots fired. He set up a roadblock by placing his vehicle perpendicular to the road and exited his vehicle. Shortly after setting up the roadblock, a white truck drove toward and then past the roadblock at approximately sixty miles per hour, moving through a tight space between the road and a fence. Deputy Mike evaded the truck and fired two shots at the departing truck. Deputy Mike testified that he was able to look at the driver, and he could say with certainty that it was Riso.

Sergeant Kerry Simmons likewise responded to a call for shots fired. He testified that he located the truck and pursued it for just under ten minutes. The pursuit occurred over loose gravel and upon roads bordering a canal. According to Sergeant Simmons, the driver of the truck would have had an opportunity to throw away a firearm during the pursuit. Sergeant Simmons testified that the search continued for the driver of the truck after the truck was found abandoned and that Riso was apprehended approximately four hours later. Trooper Raquel McLaurin testified that she came upon Riso walking on the side of a road. Riso identified himself to Trooper McLaurin and was taken into custody.

Lieutenant Donny Whitaker testified that he oversees the Criminal Investigations Division of the Medina County Sheriff's Office. He investigated whether Deputy Mike had rightful cause to discharge his firearm. On the day in question, Lieutenant Whitaker arrived at the location of the abandoned truck. While he was going through the truck, Riso's mother approached Lieutenant Whitaker in her vehicle. According to Lieutenant Whitaker, Ms. Riso "appeared to be angry."

The prosecutor asked Lieutenant Whitaker what Ms. Riso told him. At this point, Riso's counsel objected on hearsay grounds. The trial court overruled the objection, and Lieutenant Whitaker testified: "She was angry that we had fired shots at her son." Defense counsel approached the bench and renewed his objection. Defense counsel argued: "[As] to excited utterance[, s]omebody just being angry is not enough for an excited utterance or upset [sic]." The trial court again overruled the objection. Lieutenant Whitaker further testified that he did not see a shell casing in the white pickup truck, and he agreed with defense counsel, on cross-examination, that the casing could have fallen out and been lost. Lieutenant Whitaker also did not know whether police had searched for a bullet in the area where Rogers said he saw dirt fly.

The State rested. Outside the presence of the jury, Riso's counsel again renewed his objection to testimony concerning Ms. Riso, stating:

> Aside from it being hearsay, Your Honor, this is new discovery. This has not been a part of any discovery packet that I've received. It's not been part of any report or video that I viewed and furthermore, the witness testified that he did not put it in his original report, which I have, neither made a supplemental report with that statement; did not have a body cam video recording of that statement or any recording of that statement that would have been discoverable, Your Honor. It is a major piece of evidence that I was not privy to. I only heard it for the first time as this witness took the stand, Your Honor. I would object to it being admissible and I would ask that you direct the jury to disregard that statement. In lieu of that, I would ask for a mistrial.

The prosecutor responded that he should have told opposing counsel about the statement the night before, when he first learned about it. The trial court overruled the objection, stating the matter "probably should have been disclosed" but reasoning that any statement attributable to Ms. Riso "qualifies as an excited utterance . . . if it even goes to the truth of the matter asserted."

The defense rested, and the parties gave closing arguments. The prosecutor began by reading the indictments for deadly conduct and for evading arrest with a motor vehicle, and he asked: "So the question is, did we prove these cases to you beyond a reasonable doubt." The

prosecutor recapped the evidence. He argued the evidence proved a motive: that Riso wished to retaliate against the Perez family, who purchased land sold by his father, because Riso believed the land should be his inheritance. Next, the prosecutor summarized testimony: Dalton and Mason identified the white pickup truck seen on the property as Riso's truck; Dalton testified that Riso pointed a rifle at him and shot; Dalton testified he saw dirt fly where he believed a shot had hit; and Deputy Jackson and Deputy Mike identified Riso while Riso was driving the white truck. In addition, the prosecutor highlighted video evidence from Deputy Wright's body-worn camera that purportedly showed a bullet casing in the white truck. After identifying several additional pieces of evidence, the prosecutor stated: "[I]t is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all reasonable doubt concerning the defendant's guilt." He then concluded by asking the jury to find Riso guilty on both counts.

Riso's counsel argued in his closing argument that the jurors' job was to protect the community "from prosecution that is malicious and police activity that is sloppy." He argued there had been an "[i]ncomplete investigation all around." First, counsel argued, there was a rush to ascribe a motive to Riso when the opposite could have been said: that the Perez family had a motive to lie about Riso because there was a "beef" between the Perez family and Riso. Next, defense counsel summarized the evidence, including that Mason identified Riso's truck but did not actually see Riso driving. Counsel also argued that police reports identified a male subject, but not Riso specifically, and Riso's counsel criticized the State for failing to process the white truck for fingerprints or gunshot residue and for failing to search for the bullet that Dalton testified had hit the dirt behind him. Counsel asserted:

> So there was no investigation. There was no corroboration. And what's worse is, there was no way to say can we eliminate [Riso] as the suspect because the case was closed as soon as they found that truck.

Counsel asked the jury to find Riso not guilty to send a message to law enforcement: "Bring us better investigative work."

The prosecutor returned for a rebuttal and argued: "Sometimes the reason why people make conclusions is because they are obvious. . . . [T]here was no doubt whose truck that was. It's [Riso's] truck." The prosecutor asserted: "[Riso is] guilty through a lot of positive [identification]. Officers know who he is. They don't dislike him[;] they just know him. They've dealt with him." The prosecutor also asserted:

> When there [are] holes in the investigation, you can only make your decision based on . . . [w]hat you hear. And then so the question is, you don't, as people of the community say, "Well, they should have done this and should have done that in the investigation so let's find a guilty person not guilty." What you do is say, "We don't have that here. The question is, is the evidence they have enough to find somebody not guilty." It's not a close call.

Next, the prosecutor argued: "[H]oles in the investigation do[] not equal reasonable doubt. . . . In order for it to be reasonable doubt there has to be something else, somebody else who could have done it." The prosecutor argued: "So if somebody did it, it had to be the owner of the truck. Later, the prosecutor summed up his point:

> Nobody is saying that it could have been anybody else. They are saying, "Well, they didn't prove it. They didn't prove it." In order for it to be a reasonable doubt, you have to have like some other ideas as to what happened, right?

Defense counsel objected: "Objection. That's shifting the burden right there. Having some alternative theory. It's enough to say they didn't prove it." The trial court overruled the objection, and the prosecutor resumed his closing argument: "It's certainly enough to say they didn't prove it. But that doesn't mean you can't look at the facts and say, 'Yes, they did.'"

The jury found Riso guilty of the charged offenses, and the trial court sentenced him to eight years' imprisonment. Riso timely appealed.

## JURY ARGUMENT

In his first issue, Riso argues the trial court erred in overruling defense counsel's objection to the State's closing jury argument. Counsel objected that the State improperly shifted the burden of proof to Riso, in violation of due process.

### Applicable Law and Standard of Review

"The purpose of closing argument is to facilitate the jury's proper analysis of the evidence presented at trial in order to arrive at a just and reasonable conclusion based solely on the evidence." *Hinojosa v. State*, 433 S.W.3d 742, 760 (Tex. App.—San Antonio 2014, pet. ref'd) (citation omitted). "[P]roper jury argument generally falls within one of four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement." *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008).

To determine whether a party engaged in improper jury argument, we must consider the argument in light of the entire argument made and not just isolated sentences. *See Rodriguez v. State*, 90 S.W.3d 340, 364 (Tex. App.—El Paso 2001, pet. ref'd); *see also Mosley v. State*, 686 S.W.2d 180, 183 (Tex. Crim. App. 1985) ("[E]very alleged error must be viewed in the context of the entire argument."). We review a trial court's ruling on an objection to a jury argument under an abuse of discretion standard. *York v. State*, 258 S.W.3d 712, 717 (Tex. App.—Waco 2008, pet. ref'd). An improper jury argument "will not constitute reversible error unless, in light of the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceeding." *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000).

To preserve error regarding improper jury argument, a party is required to object each time an improper jury argument is offered. *See Threadgill v. State*, 146 S.W.3d 654, 667 (Tex. Crim.

App. 2004); *Dickerson v. State*, 866 S.W.2d 696, 699 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd). Absent an objection, a defendant waives error unless the error is fundamental. *Ganther v. State*, 187 S.W.3d 641, 650 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). Fundamental error is error that creates egregious harm, and egregious harm is such that a defendant has not had a fair and impartial trial. *See id.*

**Analysis**

Riso complains that the State "emphasized" "multiple times" and "attempted more than once" to shift the burden of proof when it argued at closing that the defense must present an alternative theory or provide evidence of Riso's innocence in order to secure a not-guilty verdict. The State responds that its prosecutor at closing appropriately responded to defense counsel's closing argument that another unidentified individual could have been responsible for the crimes.

After reviewing the entire record, we hold the trial court did not abuse its discretion in overruling Riso's objection. We further hold, as to any statements Riso objects to for the first time on appeal, the prosecutor's closing argument did not rise to the level of reversible error. A repeated refrain from the State's closing argument was that the State's burden was to prove guilt beyond a reasonable doubt, but it had no obligation to prove guilt "beyond all possible doubt." The State argued the evidence satisfied its minimum burden and went beyond, for example, by suggesting a motive. In rebuttal, this overarching point narrowed to the prosecutor's specific argument that any holes in the investigation could not create reasonable doubt because the conclusion of guilt that could be drawn from the testimony identifying Riso and his truck was "obvious." As the prosecutor asserted: "[H]oles in the investigation do[] not equal reasonable doubt. . . . In order for it to be reasonable doubt there has to be something else, somebody else who could have done it."

In context, we do not take the prosecutor's statement to suggest that Riso had the burden to identify another potential suspect to avoid conviction. Instead, the prosecutor's statement was

a reasonable deduction drawn from the evidence, which in general implicated only Riso, and a rebuttal to defense counsel's closing argument that any holes in the investigation could prevent the jury from finding guilt beyond a reasonable doubt. *See Ford v. State*, 444 S.W.3d 171, 198 (Tex. App.—San Antonio 2014), *aff'd*, 477 S.W.3d 321 (Tex. Crim. App. 2015) (determining State's closing argument "If not him, who?" amounted to a reasonable deduction from the evidence; "Having presented its theory of the case and web of circumstantial evidence linking Ford to the murder, it was a reasonable deduction from the evidence for the State to argue no one else could have or would have committed this crime except Ford."); *Tucker v. State*, 456 S.W.3d 194, 217–18 (Tex. App.—San Antonio 2014, pet. ref'd) (holding State's argument that jury would have to find "elaborate scheme" to coach complainants was not improper burden shifting but was response to defense counsel's argument that complainants had been coached); *cf. Jackson v. State*, 17 S.W.3d 664, 674 (Tex. Crim. App. 2000) ("[T]he prosecutor may comment on the defendant's failure to produce witnesses and evidence so long as the remark does not fault the defendant for exercising his right not to testify.").

> The prosecutor also stated:

> When there [are] holes in the investigation, you can only make your decision based on . . . [w]hat you hear.  And then so the question is, you don't, as people of the community say, "Well, they should have done this and should have done that in the investigation so let's find a guilty person not guilty."  What you do is say, "We don't have that here. *The question is, is the evidence they have enough to find somebody not guilty.*"  It's not a close call.

(emphasis added).  On appeal, Riso points to the italicized language to argue the prosecutor "put the impetus on the defense."  Again, in context, we understand the prosecutor's argument to be that the evidence of Riso's guilt is "obvious," and the prosecutor rhetorically asks whether the evidence could establish anything but the defendant's guilt under the reasonable-doubt standard.  This statement is a comment on the evidence and a rebuttal to defense counsel's argument about

purported holes in the investigation. *See Ford*, 444 S.W.3d at 198; *Tucker*, 456 S.W.3d at 217–18.[2]

Riso objected to the following argument:

> Nobody is saying that it could have been anybody else. They are saying, "Well, they didn't prove it. They didn't prove it." In order for it to be a reasonable doubt, you have to have like some other ideas as to what happened, right?

This statement, like the ones just discussed, in context, reasserts the State's theme that its burden was to prove guilt beyond a reasonable doubt, but no further. The prosecutor acknowledged immediately after the trial court overruled the objection: "It's certainly enough to say they [i.e., the State] didn't prove it. But that doesn't mean you can't look at the facts and say, 'Yes, they did.'" Again, we hold the prosecutor's argument amounts to a reasonable deduction from the evidence and an answer to opposing counsel's argument. *Ford*, 444 S.W.3d at 198; *Tucker*, 456 S.W.3d at 217–18. The prosecutor's argument did not amount to a suggestion that Riso had to prove anything for acquittal. *Cf. Sotelo v. State*, No. 13-09-00024-CR, 2009 WL 4695387, at *3 (Tex. App.—Corpus Christi–Edinburg Dec. 10, 2009, no pet.) (mem. op., not designated for publication) ("[T]he State's argument became improper when the State suggested that [defendant] had the burden 'to blow and prove' his innocence.")

We overrule Riso's first issue.

### FAILURE TO DISCLOSE

In his second issue, Riso argues the State failed to turn over exculpatory and mitigating evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and article 39.14 of the Texas

---

[2] In addition, defense counsel did not object to this statement or the previous statement we discussed, and Riso does not argue on appeal that these statements amount to fundamental error. *See Threadgill*, 146 S.W.3d at 667; *Ganther*, 187 S.W.3d at 650; *Dickerson,* 866 S.W.2d at 699.

Code of Criminal Procedure. Consequently, according to Riso, the trial court erred by failing to instruct the jury to disregard the evidence. We hold Riso failed to preserve error.

Riso's second issue concerns testimony by Lieutenant Whitaker regarding Ms. Riso. Lieutenant Whitaker testified that Ms. Riso "appeared to be angry" when she approached him by the abandoned white truck. The prosecutor asked Lieutenant Whitaker what Ms. Riso told him, and Riso's counsel objected on hearsay grounds. The trial court overruled the objection, and Lieutenant Whitaker testified: "She was angry that we had fired shots at her son." Next, defense counsel renewed his objection outside the presence of the jury. Defense counsel argued: "[As] to excited utterance[, s]omebody just being angry is not enough for an excited utterance or upset [sic]." The trial court again overruled the objection. After testimony resumed, Lieutenant Whitaker stated that he did not describe his encounter with Ms. Riso in his report because "[i]t didn't seem to have [any] bearing on the case at the time." On cross-examination, Lieutenant Whitaker affirmed that he did not include his conversation with Ms. Riso in his report or any supplemental report and that he did not have any recording of the conversation. After Lieutenant Whitaker's testimony concluded, the State rested. Then, outside the presence of the jury, Riso's counsel again renewed his hearsay objection and, for the first time, asserted that "a statement attributed to Ms. Riso about her son's truck being fired at" was "new discovery." Defense counsel objected to the statement being admissible, asked the trial court to direct the jury to disregard the statement, and, in lieu of that, asked for a mistrial. The trial court denied these requests.

To preserve error for appellate review, the record must show that the objection "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1(a)(1)(A). The complaining party must "let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge

to understand him at a time when the judge is in the proper position to do something about it." *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012) (citation omitted). "When *Brady* material is divulged during trial, a defendant's failure either to (1) object to the admission of the evidence based on a *Brady* violation, or (2) request a continuance, waives the error 'or at least indicates that the delay in receiving the evidence was not truly prejudicial.'" *Boyd v. State*, No. 04-17-00193-CR, 2018 WL 3129463, at *8 (Tex. App.—San Antonio June 27, 2018, no pet.) (mem. op., not designated for publication) (citing *Perez v. State*, 414 S.W.3d 784, 790–91 (Tex. App.—Houston [1st Dist.] 2013, no pet.)); *accord Jones v. State*, 234 S.W.3d 151, 158 (Tex. App.—San Antonio 2007, no pet.) (holding defendant must request continuance and present *Brady* complaint in motion for new trial to preserve complaint for appellate review).

We hold Riso forfeited his complaint by his failure to timely object or request a continuance when questioning began on Lieutenant Whitaker's interaction with Ms. Riso and the purported basis for Riso's *Brady* and statutory objection became apparent. *See* TEX. R. APP. P. 33.1(a)(1)(A); *Clark*, 365 S.W.3d at 339; *Jones v. State*, 234 S.W.3d at 158. This case does not present a circumstance in which defense counsel learned about an undisclosed matter after the parties rested. *Cf. Pena v. State*, 353 S.W.3d 797, 807–09 (Tex. Crim. App. 2011) (holding *Brady* issue preserved where defendant became aware of undisclosed audio tape after jury retired to deliberate and defendant filed a motion for new trial). Instead, counsel should have been aware, when he made his initial hearsay objection, that Lieutenant Whitaker's interaction with Ms. Riso was not previously disclosed. At that time, the trial court was in a position to prohibit the testimony or grant a continuance on the bases on any untimely disclosure. However, only after the State rested did defense counsel assert a purported disclosure violation. This objection was untimely. *See* TEX. R. APP. P. 33.1(a)(1)(A); *Clark*, 365 S.W.3d at 339; *cf. Wilson v. State*, 7 S.W.3d 136, 146 (Tex. Crim. App. 1999) (holding *Brady* complaint procedurally defaulted where defendant acted

untimely by waiting to request continuance until after both sides rested).  The fact that on cross-examination the State's failure to previously disclose the interaction may have become "*more apparent* does not render timely an otherwise untimely complaint."  *Wilson*, 7 S.W.3d at 146.

We overrule Riso's second issue.[3]

## CONCLUSION

We affirm the trial court's judgments.

Rebeca C. Martinez, Chief Justice

DO NOT PUBLISH

---

[3] Riso does not argue on appeal that the trial court erred by denying his oral motion for mistrial.  *Cf. Griggs v. State*, 213 S.W.3d 923, 927 (Tex. Crim. App. 2007) ("A motion for mistrial is timely only if it is made as soon as the grounds for it become apparent.").