

# NUMBER 13-22-00512-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

SERVANDO SANCHEZ,                                              **Appellant,**

**v.**

THE STATE OF TEXAS,                                             **Appellee.**

### On appeal from the 117th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Tijerina**
**Memorandum Opinion by Justice Benavides**

Appellant Servando Sanchez was convicted of two counts of aggravated assault of a public servant and one count of aggravated assault against a family member causing serious bodily injury, all first-degree felonies. *See* TEX. PENAL CODE ANN. § 22.02(b)(1), (b)(2)(B). The jury sentenced Sanchez to seventy years' and forty-five years' imprisonment for the counts of aggravated assault of a public servant, and it sentenced

him to thirty years' imprisonment for the count of aggravated assault against a family member causing serious bodily injury. The sentences were ordered to run concurrently. By two issues that we have reorganized, Sanchez argues that the trial court abused its discretion by: (1) granting the State's motion for forfeiture by wrongdoing; and (2) admitting certain exhibits despite their untimely disclosure. We affirm.

## I. FORFEITURE BY WRONGDOING

Sanchez argues that the trial court abused its discretion by granting the State's motion for forfeiture by wrongdoing.

### A. Background

The testimony and evidence elicited at trial indicate that on December 31, 2021, Sanchez assaulted Alaina Griffith, his common-law wife. Sanchez then stabbed Officers Eluterio Reyes and Janelle Castillo of the Corpus Christi Police Department with a knife during the ensuing attempt to apprehend him.

The State subpoenaed Griffith to testify during its case-in-chief. The State also requested a writ of attachment, which the trial court granted. However, Griffith did not appear to testify.

Seeking to introduce evidence of Griffith's out-of-court statements, the State later moved for forfeiture by wrongdoing, and the trial court held a hearing on the motion outside the presence of the jury. *See* TEX. CODE CRIM. PROC. ANN. art. 38.49; *Brown v. State*, 618 S.W.3d 352, 355 (Tex. Crim. App. 2021) (noting that, under the common law forfeiture by wrongdoing doctrine, "statements of a witness who was 'detained' or 'kept

2

away' by the 'means or procurement' of the defendant" are exempt "from the restrictions of the Confrontation Clause."). In support of the motion, the State offered over one hundred jail calls between Sanchez and Griffith as Exhibits 42, 43, and 44. Defense counsel objected to the admission of the calls on the basis that they were not timely provided to him. Specifically, defense counsel argued, "I was handed those—it's—it looks like 100, maybe 200 phone calls, and I was handed that earlier today, Judge. I have not reviewed them all." The trial court overruled the objection and admitted the exhibits into evidence solely for the purpose of the hearing.

The following are statements made during those calls by Sanchez to Griffith and, where indicated, exchanges between Sanchez and Griffith:

- [Sanchez]: Tomorrow I go to court.

  [Griffith]: I know . . . . So, . . . what do I tell them? Like, do I talk to them, what do I do?

  [Sanchez]: Nothing, just stay away from them, girl. You really want to see me fucking go to prison for forty . . . years? . . . For real, . . . we already done went over this shit. Don't worry about no fucking calls, don't worry about stepping foot into that fucking courtroom, stay away from it all. . . . If you love me and give a fuck about me and want me to be in your life, don't make a move.

- "[P]lease don't go to court . . . . Please, I beg you."

- "If you miss me, you know what to do, right? . . . Don't go to court."

- "I'm begging you, baby, just be incognito."

- "If you really miss me and want me home, to give me a fighting chance, just don't answer their calls and don't go to court."

3

Lisa Lathrop, the victim's assistance coordinator at the Nueces County District Attorney's Office, testified that she had "sporadic" contact with Griffith over the life of Sanchez's case. Lathrop testified that she attempted to set up a meeting with Griffith, and that Griffith "was going to get back to us with a time that would be good," but the meeting never came to fruition.

At the conclusion of the hearing, the trial court granted the State's motion, holding that Sanchez forfeited his right to confront Griffith, and therefore, Griffith's out-of-court statements would be admissible notwithstanding the Confrontation Clause.

## B.    Standard of Review & Applicable Law

The Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004); *see* U.S. CONST. amend. VI. However, a defendant may, by his own wrongful conduct, waive his right to confront the witnesses against him. *See Giles v. California*, 554 U.S. 353, 359 (2008). This doctrine, referred to as forfeiture by wrongdoing, "is based on the principle that 'any tampering with a witness should once [and] for all estop the tamperer from making any objection based on the results of his own chicanery.'" *Colone v. State*, 573 S.W.3d 249, 264 (Tex. Crim. App. 2019) (quoting *Gonzalez v. State*, 195 S.W.3d 114, 117 (Tex. Crim. App. 2006)) (alteration in original).

Our Legislature codified this doctrine in article 38.49 of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 38.49. Article 38.49(a) provides:

4

A party to a criminal case who wrongfully procures the unavailability of a witness or prospective witness:

(1) may not benefit from the wrongdoing by depriving the trier of fact of relevant evidence and testimony; and

(2) forfeits the party's right to object to the admissibility of evidence or statements based on the unavailability of the witness as provided by this article through forfeiture by wrongdoing.

*Id.* art. 38.49(a).

To determine whether a party has wrongfully secured the absence of a witness, the trial court must decide, outside the presence of the jury, whether forfeiture by wrongdoing occurred by a preponderance of the evidence. *Id.* art. 38.49(c). The party offering evidence to support forfeiture by wrongdoing is not required to show:

(1) the actor's sole intent was to wrongfully obtain the witness's or prospective witness's unavailability;

(2) the actions of the actor constituted a criminal offense; or

(3) any statements offered are reliable.

*Id.* art. 38.49(d). But to establish that a witness is truly unavailable, the movant must show that they have "made a good-faith effort to obtain the witness's presence at trial." *Reed v. State*, 312 S.W.3d 682, 685 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd).

Because the doctrine of forfeiture by wrongdoing involves the admission of otherwise inadmissible evidence, we review the trial court's admission of evidence under the doctrine for an abuse of discretion. *Shepherd v. State*, 489 S.W.3d 559, 572 (Tex. App.—Texarkana 2016, pet. ref'd); *see Bullock v. State*, No. 01-22-00076-CR, 2023 WL 8939274, at *3 (Tex. App.—Houston [1st Dist.] Dec. 28, 2023, no pet. h.). "This is a

5

deferential standard that requires appellate courts to view the evidence in the light most favorable to the trial court's ruling." *Burch v. State*, 541 S.W.3d 816, 820 (Tex. Crim. App. 2017). "In determining whether the trial court abused its discretion, an appellate court must not substitute its own judgment for that of the trial court, and it must uphold the trial court's ruling if it is within the zone of reasonable disagreement." *Id.* "The trial court's ruling is within the 'zone of reasonable disagreement' when there are two reasonable views of the evidence." *Id.*

## C.    Analysis

Sanchez argues that "the only reason for the unavailability of Griffith is that no person attempted to serve Griffith with a writ of attachment signed by the trial court at the beginning of the second day of trial" and that the "State failed to prove that any person attempted to even serve Griffith with a trial subpoena." A returned subpoena appears in the record and indicates that Griffith was served with it on October 12, 2022. Trial in this case commenced on October 17, and the hearing on the State's motion for forfeiture by wrongdoing took place on October 18. We note that Griffith appeared during the punishment phase of trial to testify on behalf of Sanchez. During her testimony, Griffith acknowledged that she had been served with a subpoena for the guilt-innocence phase. She also testified that "one of the reasons" she did not comply with the subpoena is that Sanchez instructed her not to testify. There is no requirement that the State take futile steps to secure an uncooperative witness's presence for the doctrine to apply. *See Ledbetter v. State*, 49 S.W.3d 588, 594 (Tex. App.—Amarillo 2001, pet. ref'd) ("The State

is not required to engage in clearly futile activities before a trial court can, in its discretion, determine that the State made good-faith efforts to produce a witness at trial."); *see also Schindler v .State*, No. 02-17-00241-CR, 2018 WL 4924946, at *6 (Tex. App.—Fort Worth Oct. 11, 2018, pet. ref'd) (mem. op., not designated for publication) (concluding that the evidence was sufficient to support the trial court's finding of forfeiture by wrongdoing even though no subpoena was ever served on the witness). The State need only show that it made good faith efforts to secure the witness's presence at trial, *see Reed*, 312 S.W.3d at 685, and the served subpoena, Lathrop's attempts to contact Griffith, and Sanchez's instructions to ignore the State's calls all establish by a preponderance of the evidence that the State made such efforts in this case. *See Ledbetter*, 49 S.W.3d at 594.

Sanchez also argues that "he was in jail and unable to physically restrain Griffith from his trial." However, "[i]ntimidation is a well-recognized basis for employment of forfeiture by wrongdoing." *See Sohail v. State*, 264 S.W.3d 251, 259 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd) ("The rule is widely utilized where a defendant intimidated, bribed, or killed a witness in order to ensure unavailability."). And the doctrine applies in cases where a party merely consents to wrongdoing, as well as when the party actively engages in it himself. *See id.*; *see also United States v. Rivera*, 412 F.3d 562, 567 (4th Cir. 2005) (providing that "[a]ctive participation or engagement . . . is not required" for the doctrine of forfeiture by wrongdoing to apply).

In the jail calls admitted during the hearing, Sanchez begged Griffith not to appear in court. Such an act was undoubtedly done with the intent to have Griffith not testify. *See*

*Giles*, 554 U.S. at 359 (providing that the doctrine of forfeiture by wrongdoing applies "when the defendant engaged in conduct *designed* to prevent the witness from testifying"). We conclude that the trial court did not abuse its discretion in granting the State's motion for forfeiture by wrongdoing. *See* TEX. CODE CRIM. PROC. ANN. art. 38.49; *Shepherd*, 489 S.W.3d at 575; *see also Espinoza v. State*, No. 05-17-00547-CR, 2018 WL 6716619, at *13 (Tex. App.—Dallas Dec. 21, 2018, no pet.) (mem. op., not designated for publication) ("Though there is no evidence of a *direct* threat or command from appellant to Sandoval to . . . not appear in court, the record is replete with evidence that this is precisely the outcome appellant intended. . . . We cannot conclude, based on this record, that the trial court abused its discretion in finding a forfeiture by wrongdoing and admitting Sandoval's out-of-court-statements."); *Thompson v. State*, No. 10-16-00238-CR, 2017 WL 3182988, at *4 (Tex. App.—Waco July 26, 2017, no pet.) (mem. op., not designated for publication) ("Appellant called Henderson the day before the trial and told her to leave town until his trial was over. The trial court did not abuse its discretion in finding by a preponderance of the evidence that Appellant wrongfully procured the unavailability of Henderson.").

We overrule Sanchez's first issue.

## II.  ADMISSION OF EVIDENCE

By his second issue, Sanchez contends the trial court erred by admitting certain exhibits, because they were not timely disclosed to the defense, citing the Michael Morton Act and *Brady*. *See* TEX. CODE CRIM. PROC. ANN. art. 39.14; *Brady v. Maryland*, 373 U.S.

8

83 (1963).

## A. Applicable Law

"A *Brady* violation occurs when the state suppresses, willfully or inadvertently, evidence favorable to appellant." *Harm v. State*, 183 S.W.3d 403, 406 (Tex. Crim. App. 2006). "Appellant must satisfy three requirements to establish a *Brady* violation: (1) the state suppressed evidence; (2) the suppressed evidence is favorable to [the] defendant; and (3) the suppressed evidence is material." *Id.* These same three elements must be established to demonstrate a Morton Act violation, as well, although the materiality prong is slightly different. *See Fortuna v. State*, 664 S.W.3d 861, 867 (Tex. App.—Houston [14th Dist.] 2023, no pet.); *see also Watkins v. State*, 619 S.W.3d 265, 290 (Tex. Crim. App. 2021) (providing that "material" under the Morton Act is more expansive than under *Brady* and is "synonymous with 'relevant'"). A conviction should not be reversed simply because evidence "was not disclosed as early as it might have been and should have been." *Perez v. State*, 414 S.W.3d 784, 790 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (citing *Palmer v. State*, 902 S.W.2d 561, 565 (Tex. App.—Houston [1st Dist.] 1995, no pet.)).

## B. Analysis

Sanchez takes issue with Exhibits 42, 43, 44, 45, 58, and 59. As Sanchez acknowledges in his brief, the Morton Act's requirement that the State disclose all material evidence is triggered only after "receiving a timely request from the defendant." *See* TEX. CODE CRIM. PROC. ANN. art. 39.14(a); *Glover v. State*, 496 S.W.3d 812, 815 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). The record demonstrates that Sanchez made no

such request. Nonetheless, we will assume without deciding that the State was required to turn over the exhibits at issue under the Morton Act's requirements that are specific to exculpatory evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 39.14(h) ("Notwithstanding any other provision of this article, the state shall disclose to the defendant any exculpatory, impeachment, or mitigating document, item, or information in the possession, custody, or control of the state that tends to negate the guilt of the defendant or would tend to reduce the punishment for the offense charged."); *Fortuna*, 664 S.W.3d at 867.

Exhibits 42 through 44 included over one hundred jail calls between Sanchez and Griffith during the three weeks leading up to trial and were admitted solely for the purpose of the hearing on the State's motion for forfeiture by wrongdoing. *See* TEX. CODE CRIM. PROC. ANN. art. 38.49(b) ("Evidence and statements related to a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of a witness or prospective witness are admissible and may be used by the offering party to make a showing of forfeiture by wrongdoing . . . ."). They were not played for the jury during the guilt-innocence phase of trial.

However, these exhibits were later renumbered as Exhibits 66 and 68 and were admitted into evidence during the punishment phase of trial. Sanchez objected to the calls on the basis that they were "not relevant." This did not preserve Sanchez's objection to the calls being disclosed in an untimely manner. *See* TEX. R. APP. P. 33.1; *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990) ("An objection stating one legal basis may

10

not be used to support a different legal theory on appeal."). Additionally, the State does not suppress evidence "when the appellant [i]s already aware of the information" at issue. *Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002). "[A]ppellant knew of both the existence and the content of his" jail calls, "as a matter of simple logic, because he was there" when they were made. *See Havard v. State*, 800 S.W.2d 195, 204 (Tex. Crim. App. 1989).

Exhibit 45 was a video recording of an interview with Griffith at the hospital. Defense counsel objected to Exhibit 45 on the basis that "[i]t's hearsay and deprives [Sanchez] of his right to confrontation." However, there was no objection to Exhibit 45 on the basis that it was not timely disclosed to the defense. Therefore, we conclude that Sanchez has not preserved this issue for our review. *See Rezac*, 782 S.W.2d at 870; *see also* TEX. CODE CRIM. PROC. ANN. art. 38.49(a)(2).

Exhibits 58 and 59 are stills from a police officer's body camera footage from the evening of December 31, 2021. Defense counsel objected to these exhibits on the basis that they were not timely provided. However, again, the State does not have a duty to disclose exculpatory evidence "if the defendant was actually aware of the exculpatory evidence or could have accessed it from other sources." *Pena v. State*, 353 S.W.3d 797, 810 (Tex. Crim. App. 2011); *see Hayes*, 85 S.W.3d at 815; *Havard*, 800 S.W.2d at 204. There is no dispute that the State timely provided Sanchez with access to the body camera footage and that Sanchez was aware of the images captured in the stills. There is also no dispute that the jury had already watched the body camera footage at the time

the stills were offered into evidence. *See Havard*, 800 S.W.2d at 205 ("An objection to photographic evidence is waived if the same information contained in the photographs is conveyed to the jury in some other form."). Therefore, we conclude that Sanchez has failed to demonstrate that the State impermissibly suppressed Exhibits 58 and 59. *See Pena*, 353 S.W.3d at 810.

We overrule Sanchez's second issue.

### III.    CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES
Justice

Do not publish.
TEX. R. APP. P 47.2(b).

Delivered and filed on the
1st day of February, 2024.

12